Filed 7/28/26  Tran v. Tran CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| LOUIS TRAN, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> LISA TRAN et al., <br><br>     Defendants and Appellants. | H052186 <br> (Santa Clara County <br>  Super. Ct. No. 20CV366973) |
| LOUIS TRAN, <br><br>     Plaintiff, Cross-defendant, and <br>     Appellant, <br><br> v. <br><br> LISA TRAN et al., <br><br>     Defendants, Cross- <br>     complainants, and <br>     Respondents. | H052300 |

In these appeals, two siblings dispute the proper disposition of a house they jointly inherited from their father and an award of attorney fees incurred in litigation over the issue.

After their father's death, Louis Tran[1] and Lisa Tran (then minors) inherited real property in San Jose (the property) through their mother, Kathy Tran Phan, their then-guardian. After reaching the age of majority, Louis and Lisa entered into an agreement that gave Lisa the right to purchase Louis's ownership interest in the property. The agreement was subject to a "time-of-the-essence" clause which required Lisa to pay Louis by a stated deadline or the agreement would become unenforceable. In the agreement, Louis waived his right to partition of the property but reserved his right to pursue a partition action in the event Lisa failed to timely pay. Lisa did not pay Louis by the deadline.

After Lisa's failure to timely pay, Louis brought suit against Lisa and Kathy for quiet title and partition of the property. Lisa and Kathy filed a cross-complaint seeking partition and asserting claims for, inter alia, breach of contract and specific performance. The trial court granted summary judgment in Louis's favor on both the complaint and cross-complaint. Louis sought attorney fees under Civil Code section 1717. The trial court denied Louis's request under Civil Code section 1717, granted and apportioned attorney fees incurred for the common benefit under Code of Civil Procedure[2] section 874.020, and reduced the fee amount (hereafter, fee order). Louis timely appealed the fee order.

The trial court also entered an interlocutory judgment under section 872.720, determined the interests of the parties in the property, and ordered the partition of the property by sale. The court appointed a referee,

---

[1] For clarity, we refer to parties who share a last name by their first names as they appear in the briefs and record. (See, e.g., *In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 550, fn. 2.)

[2] All further unspecified statutory references are to the Code of Civil Procedure.

authorized the referee to sell the property at a private sale in accordance with sections 873.600 through 873.690, and directed the referee to report on the sale proceedings to the court.

The referee sought to sell the property to third party buyers. The referee filed in the trial court an ex parte application for final sale approval without giving Lisa the full statutory notice period under section 873.720 or requesting the hearing required by section 873.610. Without conducting a hearing (and over Lisa's objection), the court approved the referee's report and ordered the sale of the property to the buyers (hereafter, sale order). Lisa and Kathy timely appealed the sale order.

In his appeal of the fee order, Louis contends that the trial court erred by denying attorney fees under Civil Code section 1717 and by awarding fees under a common benefit theory. In her appeal of the sale order, Lisa argues the court committed structural error by granting the referee's application without sufficient notice under section 873.720 and by failing to conduct a hearing under section 873.610.

For the reasons stated below, with respect to the fee order, we decide Louis is entitled under Civil Code section 1717 to attorney fees on the third, fourth, and fifth causes of action in the cross-complaint, and the trial court erred in awarding fees under the common benefit doctrine. As to the sale order, we decide the court erred in finding proper notice and in failing to conduct a hearing on the referee's application. However, Lisa and Kathy have failed to meet their burden of demonstrating that these errors constituted either structural or prejudicial error. We therefore affirm the sale order, vacate the fee order, and remand for further proceedings.

# I. FACTS AND PROCEDURAL BACKGROUND[3]

## A. *Facts*

Louis and Lisa are the children of Kathy and Charles Hoat Tran. Kathy and Charles were divorced at the time of Charles's death in 2001. After Charles's death, a probate proceeding was opened in Santa Clara County Superior Court (case No. 1-01-PR-150222). The probate action resulted in an order in April 2002, which distributed the property to Louis and Lisa (then minors) through Kathy, their guardian, with Louis and Lisa each receiving a 50 percent ownership interest.

In December 2019, after Louis and Lisa reached the age of majority, they and Kathy entered into a real property purchase, settlement, and release agreement (the agreement).

The agreement set out terms and conditions for Lisa's purchase of Louis's interest in the property and additional transactions related to the property. Lisa agreed to pay Louis $370,000 (one-half of the agreed upon fair market value of the property) in consideration for Louis's assignment, transfer, and conveyance of his 50 percent interest in the property, minus certain credits and offsets for rental income, property expenses, and the reduction of and release from liability for a lien. The agreement summarized the offsetting transactions, stated that the total amount Lisa was to pay Louis was $304,725.74, and set forth the terms of escrow.

Among the terms of escrow was a "time-of-the-essence" provision, which stated: "Time is of the essence for Lisa's payment to Louis. Timely

---

[3] On our own motion, we ordered case Nos. H052186 and H052300 considered together for purposes of argument and disposition. On our own motion, in case No. H052186, we take judicial notice of the record in case No. H052300, and in case No. H052300, we take judicial notice of the record in case No. H052186. (See Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

performance is material to Louis for two reasons. First, Louis is waiving his right to sell the [] [p]roperty in a partition action where he believes that he will receive a higher sales price for his interest. Second, Louis believes that because the economy and real estate market are at risk for a slow down or recession, he wants to take advantage of a sale by partition before the fair market value of the [] [p]roperty collapses. Accordingly, if Louis does not receive payment of $304,725.74 from Lisa by March 9, 2020[,] or if Kathy does not sign this [a]greement by January 7, 2020, escrow will be automatically terminated, and this [a]greement will be unenforceable so that Louis can pursue a partition action."

The agreement also contained an attorney fees provision, which states: "If this [a]greement or the transaction contemplated herein gives rise to a lawsuit or other legal proceeding between the [p]arties, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs (including expert fees) of litigation in addition to any other judgment of the court."

Lisa did not pay Louis the amount owed under the agreement by the March 9, 2020 deadline.[4] On March 10, 2020, Lisa's attorney e-mailed Louis's attorney requesting an extension of the deadline for Lisa to purchase Louis's ownership interest under the agreement. The following day, Louis's attorney replied by e-mail, stating that the agreement automatically terminated on March 9, 2020, upon Lisa's failure to close escrow by that date.

---

[4] Although Lisa and Kathy disputed this fact in their response to Louis's separate statement of undisputed material facts, the trial court found in its order granting summary judgment that Lisa and Kathy "openly admit[ted] they did not obtain a loan until 'May 2020, approximately 78 days after they were required to pay' " Louis.

*B. Procedural Background*

1. <u>Complaint, Cross-complaint, and Motions for Summary Judgment</u>

In May 2020, Louis filed a complaint for quiet title and partition for sale of the property. The complaint named Lisa and Kathy as defendants. In paragraph Nos. 10 and 11 of his factual allegations, Louis asserted that he and Lisa had entered into the agreement, quoted the time-of-the-essence clause, and alleged that, because Lisa failed to pay Louis the purchase price by the deadline, the agreement became unenforceable. Louis further asserted that he was "[a]ccordingly, . . . exercising his right to petition by filing this action." Louis incorporated his factual allegations by reference in each of the causes of action in the complaint.

Louis alleged two causes of action, quiet title (§ 760.020) and partition by sale (§ 872.210 et seq.). In the first cause of action for quiet title, Louis alleged that Kathy claimed some adverse right, title, estate, lien, or interest in the property by virtue of her status as administrator of Charles's estate and guardian of Louis's and Lisa's estates as well as in her capacity as an individual because "it appear[ed] that Kathy may be in open and actual possession of the property for the past one year." Louis sought quiet title to the property "in favor of Louis and Lisa as tenants in common in fee with equal interests."

In the second cause of action for partition by sale, Louis similarly alleged that he and Lisa "are equal fee-simple owners" of the property, and Kathy held adverse right, title, estate, lien, or interest in the property. Louis sought partition of the property "for the common benefit of Lisa and himself" on the grounds that the property could not "be physically divided without materially impairing its value or the value of a co-owner's interest" and was

6

not "divisible under the applicable zoning regulations." Louis sought credit for reasonable attorney fees expended "for the common benefit" in connection with the partition. In his prayer for relief for the second cause of action, Louis sought the costs of partition, including "[r]easonable attorney's fees incurred by Louis for the common benefit of the parties." In his prayer for relief "on all causes of action," Louis sought "costs of suit." (Boldface & capitalization omitted.)

On July 28, 2020, Lisa and Kathy answered the complaint, asserting various affirmative defenses, including that Louis had acted in bad faith and prevented them from complying with the agreement.

Lisa and Kathy also filed a cross-complaint against Louis for partition by Kathy (first cause of action), partition by Lisa (second cause of action), breach of contract (third cause of action), breach of implied covenant of good faith and fair dealing (fourth cause of action), and specific performance (fifth cause of action). Lisa and Kathy included factual allegations regarding Lisa's efforts to obtain a mortgage loan to satisfy her financial obligations to Louis under the agreement, and Louis's refusal to sign relevant documents and his demand for additional payments. Lisa and Kathy incorporated by reference the factual allegations in each cause of action.

In the first and second causes of action for partition, Lisa and Kathy requested that "[p]artition . . . be effectuated by permitting [Lisa and Kathy] to purchase" Louis's ownership interest in the property or, in the alternative, permitting Louis to purchase Lisa's ownership interest in the property. Lisa and Kathy alleged as the basis for their partition claims that "[d]isputes ha[d] arisen between them, which render the continued joint ownership of the [] [p]roperty both unpleasant and impracticable."

7

In the third and fourth causes of action, Lisa and Kathy claimed Louis breached the terms of the agreement and the implied covenant of good faith and fair dealing by failing to perform his obligations under the agreement and doing so in bad faith. In the fifth cause of action, they asked the trial court to order Louis to specifically perform the agreement by selling the property to them. In their prayer for relief, Lisa and Kathy sought, inter alia, a partition order, an order authorizing them to purchase Louis's interest in the property, and "[a]ll costs, including attorney's fees, associated with this lawsuit." Louis answered Lisa's and Kathy's cross-complaint and asserted various affirmative defenses.

Louis moved for summary judgment on his complaint. He also moved for summary judgment against Lisa's and Kathy's cross-complaint. Lisa and Kathy opposed Louis's motions for summary judgment and responded to Louis's separate statement of undisputed material facts.

After a hearing on the motions for summary judgment, the trial court issued an order granting Louis's motions for summary judgment on both the complaint and the cross-complaint.

The trial court granted summary judgment on Louis's complaint after finding that Lisa's and Kathy's opposition did "not raise any substantive argument against the two claims for quiet title and partition." The court granted summary adjudication on the first, second, and fifth causes of action (partition and specific performance) in the cross-complaint on similar grounds. The court granted summary adjudication on the cross-complaint's third cause of action (breach of contract) because Lisa and Kathy admitted they did not obtain a loan to purchase the property until after the agreement's deadline and thus failed to demonstrate the existence of a triable

8

issue of material fact regarding their nonperformance.[5] The court granted summary adjudication on the cross-complaint's fourth cause of action (breach of implied covenant of good faith and fair dealing) because Lisa and Kathy failed to present any admissible evidence in support of their claim.

### 2. Interlocutory Judgment of Partition

Louis filed an ex parte application for submission of interlocutory judgment of partition. On November 7, 2023, the trial court entered its interlocutory judgment under section 872.720, subdivision (a), determining the interests of the parties in the property and ordering the partition of the property by sale. The court appointed a referee with the authority to sell the property at a private sale. The court ordered the referee to give notice of sale "to the persons specified under section 873.640" "as required under section 873.640 et. seq." The order stated that, "[i]n all other respects notice of and procedure for sale shall be as provided in sections 873.600 through 873.690."

The interlocutory order directed the referee, after selling the property, to provide a report to the trial court on the sale proceedings and, once the court confirmed the sale and the buyer paid the purchase price, authorized and directed the referee to execute and deliver the property deed to the buyer. The court retained its jurisdiction for the purposes of reviewing the referee's report and ordering any equitable adjustments the court deemed "just and appropriate."

### 3. Attorney Fees

Following the grant of judgment in his favor, Louis filed a motion for attorney fees and supporting documents, including his attorneys' declarations

---

[5] The trial court's order granting the motion for summary judgment recounted Lisa's unsuccessful efforts over a three-month period to obtain the necessary financing and her approval for a loan approximately two months after the deadline set out in the agreement had passed.

setting forth their hourly rates and experience and attaching their bills. Louis requested fees under Civil Code section 1717 on the grounds that, to prevail on his motions for summary judgment on both the complaint and cross-complaint, Louis had to demonstrate that the agreement was unenforceable due to Lisa's failure to timely perform her obligations thereunder and that Louis did not interfere with Lisa's ability to perform such obligations. Louis argued that Civil Code section 1717 should also apply to the noncontract claims in the complaint and cross-complaint because Louis's right to partition was conditioned upon the terms of the agreement, the agreement allowed recovery if the agreement or the transaction it contemplates gave rise to a lawsuit, and Louis's defeat of the contractual claims in the cross-complaint was "essential to" his success on the noncontract claims in his complaint. Louis sought $217,140 in attorney fees under Civil Code section 1717.

Lisa and Kathy opposed Louis's motion on the grounds that his complaint contained only statutory (noncontractual) claims, did not seek recovery of attorney fees on the agreement, and Louis's requested attorney fees were excessive and thus unreasonable given the "basic" nature of the action. They also asserted that only one-half of the claims in the cross-complaint were based on contract and the cross-complaint did not seek contractual remedies. Lisa and Kathy further argued that Louis had not sought and was not entitled to attorney fees under a common benefit theory.

In his reply, in addition to reiterating his earlier arguments, Louis agreed with Lisa and Kathy that he had made no request for attorney fees incurred for the common benefit. Louis reserved his statutory right to seek such fees in the future, and disputed Lisa and Kathy's contention that he was not entitled to such fees. Louis's attorney explained that the number of hours

spent drafting the complaint was due in part to anticipating "the potential threat of [Lisa and Kathy] filing a cross-complaint." As part of Louis's strategy, his counsel included the factual allegations regarding the time-of-the-essence clause in the agreement, the agreement's unenforceability, and Louis's right to seek partition of the property.

On April 23, 2024, a different bench officer than the one that had adjudicated the summary judgment motions conducted a hearing on Louis's motion for attorney fees. During the hearing, Louis challenged the trial court's tentative ruling denying attorney fees under Civil Code section 1717 and awarding attorney fees under the common benefit theory. Louis objected to the award on the basis that he had not sought attorney fees incurred for the common benefit, stating that he did not have "the opportunity to provide reasonable legal authority and analysis" to support such a request because his motion was "solely focused" on attorney fees under Civil Code section 1717. Although Lisa and Kathy asked the court to reject Louis's arguments, they acknowledged that "the statutory procedure[] for asking for fees . . . is by motion." The court orally adopted its earlier tentative ruling and asked Lisa's and Kathy's attorney to prepare the order.

On May 6, 2024, the bench officer that had adjudicated the summary judgment motion signed the written order for Louis's motion for attorney fees, adopting the tentative ruling in full and denying Louis's request for attorney fees under Civil Code section 1717. The trial court decided that the causes of action in the complaint sought statutory, rather than contractual, remedies. The court found the cross-complaint contained neither an allegation referencing the attorney fee provision in the agreement nor a request for attorney fees under the agreement.

11

The trial court awarded Louis $44,000 in attorney fees under sections 874.010 and 874.040 for the common benefit of the parties to the partition action. The court apportioned the fees based on its evaluation of which fees were incurred in connection with the causes of action for partition. The court reduced the requested fees after finding that, although Louis's counsel charged reasonable hourly rates, given the "relatively straightforward and not complex" facts and causes of action in the case, the number of hours incurred by Louis's counsel was "excessive, duplicative, or redundant in many instances."

4. Confirmation of Sale

On April 30, 2024, the referee filed in the trial court an ex parte application for final sale approval and further instructions, together with supporting papers. The referee reported that he had retained a realtor who listed the property for sale on March 12, 2024, he had received "numerous offers" for the property (including one from Lisa), the property was in escrow for $1.05 million, and the buyers had submitted an offer with no contingencies, meaning escrow would be "ready to close" as soon as the court approved the sale.

The referee stated Lisa had made three different offers for the property. Lisa's first offer was for $970,000 (with a credit of $270,000 based on her ownership interest in the property). After the referee consulted with the property's listing agent, he "countered only the highest offer" based on the listing agent's "opinion that the offer was extremely strong given the condition of the [p]roperty and multiple counteroffers could push the [b]uyer away." The buyer accepted the referee's counteroffer to purchase the property for $1.05 million with no contingencies. After the buyer accepted the counteroffer and escrow opened, Lisa submitted a second offer, this time

12

for $1.056 million (with a credit of " '$100,000+' ").  After the referee gave Lisa notice of his ex parte application, Lisa submitted a third offer to purchase the property, this time for $1.08 million (with a credit of " '$100,000+' ").  The referee asserted that, because he was "under contract," he was unable to act on Lisa's offer "without breaching the agreement with the [b]uyer."  The referee also stated that he had "concerns regarding credit bids."

The referee asserted that he had given proper notice of the ex parte application by sending an e-mail on April 26, 2024 (a Friday), to Lisa's attorneys notifying them that he would be filing the application on April 30, 2024 (a Tuesday).  He asked whether Lisa intended to oppose the application or would like to request a hearing.  The referee thought a hearing "could be beneficial." Nevertheless, the referee maintained that he thought it "appropriate to proceed on an ex parte basis because waiting for a hearing on a noticed motion could result in the buyer canceling the purchase contract," and, if the trial court wanted the referee to consider Lisa's offer, "then it [wa]s best to do so as soon as possible."  The referee sought the court's instructions on how to proceed.

On May 1, 2024, Lisa filed an opposition to the referee's ex parte application, together with supporting papers.  In support of her opposition, Lisa provided letters written by family members and neighbors expressing their hope that the property stay "in the family."  Lisa also submitted the declaration of her real estate agent, Larry Giang.  Giang asserted that the property's listing agent "stressed to [him] that an offer package must be complete, including a signed Agent Visual Inspection Disclosure ('AVID') form, and submitted by the offer deadline to be considered."  Nonetheless, the buyers had failed to complete an AVID form by the offer deadline.  Giang

13

further asserted that the listing agent lacked the experience intimated by the referee's ex parte application, and Lisa's third offer was $30,000 more than the highest offer on the property, included "a cash downpayment," and was "not subject to contingencies because she ha[d] already secured funding approval."

In her opposition, Lisa requested the trial court deny the referee's ex parte application because, as she contended, the referee's application "circumvent[ed]" the requirements under sections 873.720, subdivision (b), and 873.610, subdivision (b), by failing to give her at least 10 days' notice by noticed motion. She also asserted that the statute required the court to conduct a hearing to examine the referee's report and the court could not approve the report "absent a noticed motion."

Lisa argued that, should the trial court nonetheless consider the application, the court should direct the referee to accept Lisa's offer because it was "complete, complied with all requirements, ha[d] no contingencies, and, most importantly, is $30,000 more than the current offer." In comparison, Lisa asserted that the buyers' offer was incomplete, lower, and contingent upon court approval. Further, she maintained that the referee and the listing agent provided "preferential treatment" to the buyers by giving them, and not Lisa, the opportunity to respond to a counteroffer. Lisa also asked the court to consider the "numerous letters of support" from her family and neighbors.

On May 24, 2024, a different bench officer than the one who had adjudicated the motions for summary judgment and issued the interlocutory judgment of partition, issued an order on the referee's application.[6] The trial

---

[6] Although the trial court stated that it had considered the referee's ex parte application "and any opposition papers and oral argument of the

14

court ordered the sale of the property to the buyers for $1.05 million, authorized the referee to execute and deliver a quitclaim or grant deed conveying to the buyers title to the property, and ordered Kathy's lien (recorded on May 6, 2002, No. 2002-16250576) be deemed extinguished and removed from title such that it would not transfer with the property. The court directed the referee to use the net sales proceeds to pay any outstanding referee fees and costs, and hold the balance in a trust account until the court issued an order on the final distribution of funds. The court found that the referee had provided proper notice of the application.

That same day, Lisa and Kathy appealed the sale order.

## II. DISCUSSION

### A. *Louis's Appeal of the Attorney Fee Order from the Judgment*

Louis contends the trial court erred by denying his request for attorney fees under Civil Code section 1717. Louis asserts that the complaint alleged the "key terms" of the agreement and enforced his right to partition under those terms. Louis also argues that, because he had to overcome Lisa's and Kathy's contract-based affirmative defenses and Lisa and Kathy would have been entitled to attorney fees under the agreement had they prevailed on those defenses, he is entitled to attorney fees under Civil Code section 1717's principle of reciprocity.

As to the cross-complaint, Louis argues that, because Lisa and Kathy alleged contract claims, sought contractual relief, and requested contractual attorney fees in their cross-complaint, the claims in the cross-complaint are

---

parties," the register of actions does not include any entry for a hearing on the referee's application, and it is undisputed that the court did not conduct such a hearing.

15

on a contract and he is entitled to attorney fees under Civil Code section 1717.

Lisa and Kathy dispute Louis's contentions of error.

1. Civil Code section 1717

a. Legal Principles

Under the "American rule," each party to a lawsuit ordinarily pays its own attorney fees. (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751 (*Mountain Air*).) However, section 1021 "permits parties to ' "contract out" of the American rule' by executing an agreement that allocates attorney fees. [Citations.] Thus, ' "[p]arties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract." ' " (*Mountain Air*, at p. 751.)

"In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (Civ. Code, § 1717, subd. (a); see also *Santisas v. Goodin* (1998) 17 Cal.4th 599, 614 (*Santisas*).) "Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit." (Civ. Code, § 1717, subd. (a); *Chen v. Valstock Ventures, LLC* (2022) 81 Cal.App.5th 957, 970 (*Chen*).)

Parties to a contract may agree that the prevailing party may recover attorney fees for both contract claims and noncontract claims. (*Santisas*, *supra*, 17 Cal.4th at p. 608.) However, Civil Code section 1717 is limited to attorney fees on a contract claim. (*Exxess Electronixx v. Heger Realty Corp.*

16

(1998) 64 Cal.App.4th 698, 708; *Orozco v. WPV San Jose, LLC* (2019) 36 Cal.App.5th 375, 408 (*Orozco*).) Thus, even "[i]f an action asserts both contract and tort or other noncontract claims, [Civil Code] section 1717 applies only to attorney fees incurred to litigate the contract claims." (*Santisas*, at p. 615.)

Although "[t]he requirement under Civil Code section 1717 that the action be 'on a contract' has been liberally construed" (*Orozco, supra*, 36 Cal.App.5th at p. 407), "[i]n determining whether an action is 'on the contract' under [Civil Code] section 1717, the proper focus is not on the nature of the remedy, but on the basis of the cause of action." (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 347 (*Kachlon*).) Our courts have distilled "the following principle: An action (or cause of action) is 'on a contract' for purposes of [Civil Code] section 1717 if (1) the action (or cause of action) 'involves' an agreement, in the sense that the action (or cause of action) arises out of, is based upon, or relates to an agreement by seeking to define or interpret its terms or to determine or enforce a party's rights or duties under the agreement; and (2) the agreement contains an attorney fees clause." (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 242 (*Douglas*); *Orozco*, at p. 408.)

Moreover, it is well settled that a party is entitled to attorney fees under Civil Code section 1717 " 'when the party prevails on grounds the contract is inapplicable, invalid, unenforceable or nonexistent, if the other party would have been entitled to attorney's fees had it prevailed.' " (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 870 (*Hsu*); *Santisas, supra*, 17 Cal.4th at p. 611.)

"Although normally we review attorney fee awards for abuse of discretion, where, as here, the appeal presents a legal question of whether

17

the criteria for an attorney fee award have been satisfied, our review is de novo." (*American Building Innovation LP v. Balfour Beatty Construction, LLC* (2024) 104 Cal.App.5th 954, 966, citing *Mountain Air*, *supra*, 3 Cal.5th at p. 751.)

### b. Analysis

" 'Before [Civil Code] section 1717 comes into play, it is necessary to determine whether the parties entered an agreement for the payment of attorney fees, and if so, the scope of the attorney fee agreement.' [Citation.] This determination requires us to apply traditional rules of contract interpretation." (*Mountain Air*, *supra*, 3 Cal.5th at p. 752.)

We start by considering the parties' intention at the time they signed the agreement (Civ. Code, § 1636) by reviewing the plain language of the agreement (*id.*, § 1639). " ' "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' [citation], controls judicial interpretation." ' " (*Mountain Air*, *supra*, 3 Cal.5th at p. 752.)

Although "attorney fee provisions, if drafted broadly, can encompass noncontractual claims" (*Orien v. Lutz* (2017) 16 Cal.App.5th 957, 964 (*Orien*)), such as "when they apply to actions 'arising out of' or ' "relating to" ' a contract or its subject matter, or to ' "any dispute under" ' an agreement" (*id.* at pp. 964–965), a broad attorney fee provision that encompasses tort or other noncontract claims does not extend the application of Civil Code section 1717 to cover noncontract claims. (*Orozco*, *supra*, 36 Cal.App.5th at p. 408.)

The agreement at issue here contained the following attorney fee provision: "If this [a]greement or the transaction contemplated herein gives rise to a lawsuit or other legal proceeding between the [p]arties, the

18

prevailing party shall be entitled to recover its reasonable attorneys' fees and costs (including expert fees) of litigation in addition to any other judgment of the court."

As drafted, the attorney fee clause awards attorney fees to the prevailing party. Since Louis was the prevailing party on both the complaint and the cross-complaint, we must determine whether and to what extent Louis is entitled to attorney fees according to the language of the fee clause.

The provision states that the prevailing party is entitled to attorney fees arising from a lawsuit or other legal proceeding arising from the agreement or "the transaction contemplated" therein. By its terms, the agreement's purpose was to both allow the parties to account for and resolve their financial obligations with respect to the property and allow Lisa to purchase Louis's ownership interest in the property. It outlined a series of transactions related to that purpose, specifically, Lisa's purchase of Louis's ownership interest in the property, Lisa's payment of rental income and shared property expenses, the reduction of Kathy's lien on the property, and a credit in exchange for a release from liability for the lien and reduced lien. None of these transactions gave rise to either the partition or the quiet title action. We conclude the agreement's attorney fee clause by its terms does not extend to Louis's partition and quiet title claims. (*Orien, supra*, 16 Cal.App.5th at p. 965.)

Nevertheless, Louis argues that his partition cause of action is on a contract because the agreement "restored" his right to partition. We are not persuaded. Although a co-owner may waive by contract their right to partition (*LEG Investments v. Boxler* (2010) 183 Cal.App.4th 484, 493), the absolute right to partition itself is a statutory, not a contractual, construct. (§ 872.210 et seq.; *Orien, supra*, 16 Cal.App.5th at p. 964 [holding the right to

19

partition arises "under the law"]; *American Medical International, Inc. v. Feller* (1976) 59 Cal.App.3d 1008, 1013 ["The right of a co[-]owner to seek partition is governed by statute."].) A cause of action for quiet title is also a statutory action. (§ 760.020; *Robin v. Crowell* (2020) 55 Cal.App.5th 727, 740.) Louis brought his quiet title and partition actions pursuant to the applicable statutes—not the agreement.

Louis alleged in his first cause of action that he sought to quiet title to the property in his and Lisa's favor in light of Kathy's alleged adverse claims to the property based on Kathy's role as administrator of Charles's estate, guardian for Louis and Lisa, and in her individual capacity as occupant of the property. Louis alleged in his second cause of action that he sought to partition the property for his and Lisa's "common benefit" in light of Kathy's alleged adverse claims to the property and because the property was neither physically divisible nor divisible under applicable zoning regulations.

Although, according to Louis's counsel, Louis anticipated that Lisa and Kathy would file a cross-complaint and therefore included in the complaint's factual allegations the agreement's time-of-the-essence clause, neither cause of action references the agreement as a potential adverse claim on the property or as a basis for the action. (See *Mountain Air*, *supra*, 3 Cal.5th at pp. 760–761; *Kachlon*, *supra*, 168 Cal.App.4th at p. 347.) Louis did not suggest in his complaint that there was any dispute regarding his right to seek partition or nor did he seek a declaration of his right. (See § 1060; *Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 898.)

Louis contends that, by incorporating by reference the factual allegations regarding the existence and unenforceability of the agreement, his claims are necessarily on a contract. We disagree. Although Louis's claims incorporate by reference his factual allegations about the agreement,

20

the agreement functions only as the backdrop of the case, and Louis's causes of action did not seek to interpret or enforce any provision in the agreement. (See *Santisas*, *supra*, 17 Cal.4th at p. 615 [Civil Code "section 1717 applies only to actions that contain at least one contract claim."].)  Thus, despite Louis's reference to the agreement in his complaint, he "did not and could not rely on that agreement to establish [his] right to partition under these circumstances—[his] right instead arose under the law, and the agreement was irrelevant to [his] claim." (*Orien*, *supra*, 16 Cal.App.5th at p. 964.)

We are similarly unpersuaded by Louis's argument that Lisa's and Kathy's affirmative defenses transform the claims in his complaint into actions on a contract.

Lisa and Kathy asserted their ninth and 10th affirmative defenses in response to Louis's actions for quiet title and partition.  Our Supreme Court has stated that "the assertion of an affirmative defense is *not* contemplated as an 'action' or a 'proceeding.' " (*Mountain Air*, *supra*, 3 Cal.5th at p. 756; see also *id*. at p. 753, citing § 22 ["[A]n 'action' is synonymous with a lawsuit."]; *Gil v. Mansano* (2004) 121 Cal.App.4th 739, 744, fn. omitted ["[T]he assertion of a defense does not constitute the bringing of an action . . .. [Citations.]  Raising a defense may not be equated with bringing an action."].) Therefore, these affirmative defenses do not make Louis's partition and quiet title claims actions on a contract.

We decide Louis is not entitled to attorney fees under either the attorney fee clause in the agreement or Civil Code section 1717 for the claims in his complaint.

21

With respect to the cross-complaint, the third (breach of contract), fourth (breach of implied covenant of good faith and fair dealing),[7] and fifth (specific performance) causes of action in the cross-complaint sought to enforce the terms of the agreement. In each of these three causes of action, Lisa and Kathy alleged that Louis breached the agreement by actions that delayed or stymied their performance under the agreement. As discussed *ante*, the agreement contains an attorney fee provision. We decide the third, fourth, and fifth causes of action in the cross-complaint satisfy the test for an action on a contract. (*Douglas*, *supra*, 211 Cal.App.4th at p. 242; *Orozco*, *supra*, 36 Cal.App.5th at p. 408.) Because Louis prevailed on these causes of action on summary judgment by demonstrating the agreement was unenforceable, he is entitled to attorney fees on those claims under the terms of the agreement and Civil Code section 1717.[8] (*Santisas*, *supra*, 17 Cal.4th at p. 611; *Hsu*, *supra*, 9 Cal.4th at p. 870.)

The first and second causes of action seek partition "by permitting [Lisa and Kathy] to purchase [] Louis'[s] interest" in the property, or, in the alternative, by permitting Louis to purchase Lisa's and Kathy's interest in the property. The claims request that, "[i]f neither party is able to purchase

---

[7] "It is well established a breach of the implied covenant of good faith is a breach of the contract." (*Carson v. Mercury Ins. Co.* (2012) 210 Cal.App.4th 409, 429; *Thrifty Payless, Inc. v. The Americana at Brand, LLC* (2013) 218 Cal.App.4th 1230, 1244.)

[8] Although the trial court stated that the cross-complaint only sought common benefit attorney fees, entitlement to attorney fees under Civil Code section 1717 depends not on the relief sought, but on the basis for the claim. (*Kachlon*, *supra*, 168 Cal.App.4th at p. 347.) Moreover, the prayer for relief in the cross-complaint was not limited to common benefit attorney fees, but requested "[a]ll costs, including attorney's fees, associated with this lawsuit." (See Civ. Code, § 1717, subd. (a) ["Reasonable attorney's fees . . . [are] an element of the costs of suit."]; *Chen*, *supra*, 81 Cal.App.5th at p. 970.)

the other's interest," then the trial court should order a partition by sale. Although Lisa and Kathy do not cite in their cross-complaint the statutory bases for their partition claims, as discussed *ante*, the right to seek partition arises by operation of the partition statute. Therefore, these causes of action do not fall under Civil Code section 1717 or the attorney fee clause of the agreement.

Consequently, we reverse the trial court's denial of attorney fees under Civil Code section 1717 with respect to Louis's attorney fees for the third, fourth, and fifth causes of action in the cross-complaint. Louis is not entitled to attorney fees under Civil Code section 1717 for the claims in his complaint or the first and second causes of action in the cross-complaint.

2. Common Benefit

Louis asserts that the trial court erred by awarding attorney fees under a common benefit theory where Louis did not request such fees and "affirmatively disclaimed" them. Louis also contends that attorney fees incurred for the common benefit may only be awarded after a final judgment, and the interlocutory judgment is not a final judgment.

In the alternative, Louis argues that the trial court erred calculating the attorney fees awarded because the court assessed the reasonableness of the requested fees under the "incorrect" standard—a common benefit theory rather than Civil Code section 1717—and improperly apportioned fees despite the contractual and noncontractual claims being "inextricably intertwined." In addition, Louis contends that Lisa and Kathy failed to meet their burden of objecting with sufficient detail to the reasonableness of the requested attorney fees.

"A basic tenet of motion practice is that the notice of motion must state the grounds for the order being sought ([] § 1010; Cal. Rules of Court, rule

23

3.1110(a)), and courts generally may consider only the grounds stated in the notice of motion." (*Kinda v. Carpenter* (2016) 247 Cal.App.4th 1268, 1277; *Luri v. Greenwald* (2003) 107 Cal.App.4th 1119, 1125 (*Luri*); *Castagnoli v. Castagnoli* (1954) 124 Cal.App.2d 39, 41.)

Louis's motion[9] for attorney fees sought fees only under Civil Code section 1717. Nevertheless, in its fee order, the trial court awarded Louis attorney fees incurred for the common benefit under sections 874.010 and 874.040. The court therefore considered a ground not stated in Louis's motion.

A ground absent from a notice of motion "may be overlooked if the supporting papers make clear the grounds for the relief sought" (*Luri, supra,* 107 Cal.App.4th at p. 1125) or "if the omitted issue, or ground for relief, was raised without objection before the trial court" (*Golf & Tennis Pro Shop, Inc. v. Superior Court* (2022) 84 Cal.App.5th 127, 138).

Although Louis sought attorney fees incurred for the common benefit in his complaint, the papers Louis filed in support of his motion for attorney fees following entry of judgment do not suggest that his motion sought attorney fees under a common benefit theory. His motion and supporting papers discuss only his request for attorney fees under Civil Code section 1717.

At the hearing on the motion for attorney fees in April 2024, Louis objected to the trial court's tentative ruling awarding attorney fees incurred for the common benefit on the ground that he did not make such a request in his motion for attorney fees. At the hearing, Louis affirmatively stated that

---

[9] The record does not include a notice of motion for attorney fees, only a memorandum of points and authorities in support of a motion for attorney fees. The parties do not challenge on appeal the absence of a notice of motion.

24

he did not want the court to award fees on that basis at that juncture, but he planned to seek fees under the common benefit theory "during the post-sale accounting phase" of the action.  In addition, in their opposition, Lisa and Kathy objected to the award of attorney fees to Louis under the common benefit theory because, inter alia, "common benefit fees have not been requested" in the motion.[10]

Given that neither exception to the principle requiring courts to rule only on a ground sought in a noticed motion applies here, the trial court erred in so doing.  We therefore reverse the fee order with respect to the attorney fees incurred for the common benefit without prejudice to Louis's right to seek attorney fees under a common benefit theory at a later date in the underlying action.  Because we reverse the fee order on this basis, we do not reach Louis's other contentions on appeal with respect to the common benefit fees.

Louis has also requested attorney fees for this appeal.  " 'Although this court has the power to fix attorney fees on appeal, the better practice is to have the trial court determine such fees.' " (*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1267.)  Thus, upon an appropriate motion, the trial court is to consider

---

[10] At the hearing, Lisa and Kathy challenged on the grounds of fairness and judicial efficiency Louis's right to have "a second bite at the apple" by seeking fees under a common benefit theory later in the proceedings, but they did not assert that Louis sought such fees in his motion.  They asserted only that the complaint and cross-complaint, and a letter from Louis's counsel, sought attorney fees under the partition statute.

On appeal, Lisa and Kathy merely contend that, because Louis sought in his complaint attorney fees incurred for the common benefit, the trial court's award of such fees was "legally justified and factually supported." They do not argue that Louis sought in his noticed motion attorney fees incurred for the common benefit.

whether attorney fees incurred on appeal should be awarded and, if so, in what amount.  (See *ibid.*; *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 320.)

### B. *Lisa and Kathy's Appeal of the Order Confirming the Sale of the Property*

Lisa and Kathy contend that the trial court erred by granting the referee's ex parte application despite the referee's failure to provide 10 days' notice as required under section 873.720, subdivision (b)(2), and without conducting a hearing as required under section 873.610, subdivision (b).  Lisa and Kathy assert that, because the court's errors denied them due process and were "structural error[s]," such errors are presumptively prejudicial and reversible per se.  In the alternative, they maintain that they were prejudiced by having a shortened period to respond to the referee's application and by not having the opportunity at a confirmation hearing to "more fully oppose" the application and "submit an overbid."

Although Louis concedes that the trial court erred by failing to conduct a hearing on the referee's application, he contends that the error was not structural and was harmless.  He asserts that Lisa and Kathy failed to articulate what additional evidence they could have proffered at a hearing and what additional bid terms they could have presented to convince the court to accept their bid over that of the buyers, and that the evidence they submitted in their opposition was deficient.  Furthermore, Louis maintains that (1) given the court found in granting Louis's summary judgment motions that Lisa "had materially defaulted" on the agreement to purchase Louis's ownership interest in the property, "[i]t was within the [] court's discretion to view [Lisa] as unreliable"; and (2) "the summary judgment ruling was incorporated into the [] court's understanding of the parties."

26

1.  Legal Principles

Section 873.610, subdivision (b) provides that, in an action for partition by sale, the trial court "may refer the manner, terms, and conditions of sale to the referee for recommendation but shall not approve the referee's report except following a hearing upon noticed motion." Once the referee has concluded a sale, section 873.720, subdivision (a) provides that "the referee . . . may move the court to confirm or set aside the sale." As the moving party, the referee "shall give not less than 10 days' notice of motion to" (*id.*, subd. (b)) "[a]ll other parties who have appeared in the action." (*Id.*, subd. (b)(2).)

At the confirmation hearing, the trial court must "examine the [referee's] report and witnesses in relation to the report" (§ 873.730, subd. (a)) and may, at its discretion, confirm or vacate the sale (*id.*, subds. (b), (c)). If, at the hearing, "a responsible bidder" makes "a written increased offer that exceeds the sale price by at least 10 percent on the first ten thousand dollars ($10,000) and 5 percent on the amount in excess thereof," the court has the discretion to vacate the sale and either direct a new sale be made or direct acceptance of the increased offer. (§ 873.740, subd. (a); see also § 873.730, subd. (c)(3).)

We review de novo as a question of statutory interpretation whether the trial court's sale order complied with the statute. (*Severson & Werson, P.C. v. Sepehry-Fard* (2019) 37 Cal.App.5th 938, 944 (*Severson*).) We likewise review Lisa's and Kathy's procedural due process claim de novo " 'because "the ultimate determination of procedural fairness amounts to a question of law." ' " (*Ibid.*)

When construing a statutory provision, we first examine the language of the statute, construing it in the context of " ' " ' "the entire scheme of law of

27

which it is part so that the whole may be harmonized and retain effectiveness." ' " ' " (*Severson, supra,* 37 Cal.App.5th at p. 946; *Hassell v. Bird* (2018) 5 Cal.5th 522, 540; *Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 837–838.)

> ### 2. *Analysis*

The partition statute requires that the trial court conduct a hearing on a referee's report before confirming the sale of the subject property. Section 873.610, subdivision (b) states that the court "shall not approve the referee's report except following a hearing upon noticed motion." " '[T]he word "shall" in a statute is ordinarily deemed mandatory, and "may" permissive' " (*Kurz v. Syrus Systems, LLC* (2013) 221 Cal.App.4th 748, 762), " 'particularly when . . . the Legislature has used both the terms "shall" and "may" in the same statute' " (*Severson, supra,* 37 Cal.App.5th at p. 946), as the Legislature has done in the partition statute. Moreover, section 873.720, subdivision (b) requires the referee to seek confirmation of the sale by noticed motion. "The Legislature's 'use of the term "motion" (rather than "ex parte application")[11] [has been interpreted to impose] the notice *and hearing* requirements generally applicable to motions.' " (*Titmas v. Superior Court* (2001) 87 Cal.App.4th 738, 743.)

Section 873.720, subdivision (b) requires the moving party to "give not less than 10 days' notice" to the buyer(s) and "[a]ll other parties who have appeared in the action." The referee gave Lisa only four days' notice of his

---

[11] The partition statute does not use the term "ex parte application." (See generally § 872.010 et seq.; see also *St. Paul Fire & Marine Ins. Co. v. Superior Court* (1984) 156 Cal.App.3d 82, 85 ["Although certain orders may be obtained through ex parte application, a statute silent on the question should not be interpreted as authorizing an ex parte application for an order."].)

intention to file the ex parte application. Nonetheless, the trial court found the referee had given her "proper" notice of the ex parte application.

Based on the statutory text, we conclude the trial court violated section 873.610, subdivision (b) in failing to conduct a hearing on the referee's application before confirming the sale of the property to the buyers.[12] We further conclude the court erred under section 873.720, subdivision (b) in finding the referee had given proper notice. We next consider whether these errors constituted prejudicial error.

"[A]n error is reversible per se when it constitutes "a ' "structural [defect] in the . . . trial mechanism" ' that defies evaluation for harmlessness." ' [Citation.] A structural defect or error is one that affects 'the framework within which the trial proceeds, rather than simply an error in the trial process itself.' [Citation.] 'A structural error requires per se reversal because it cannot be fairly determined how a trial would have been resolved if the grave error had not occurred.' " (*TriCoast Builders, Inc. v. Fonnegra* (2024) 15 Cal.5th 766, 786–787 (*TriCoast*); *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108 (*F.P.*); *Severson, supra*, 37 Cal.App.5th at p. 951 ["The effects of [a structural] error are ' " 'unmeasurable' " and " 'def[y] analysis by "harmless-error" standards.' " ' "].) Nevertheless, " '[c]ategorization of an error as structural represents "the exception and not the rule" ' " (*F.P.*, at p. 1108) and " '[a] strong presumption' exists against finding that an error falls within the structural category." (*Ibid.*)

" ' "In the civil context, structural error typically occurs when the trial court violates a party's right to due process by denying the party a fair

---

[12] Although the trial court stated in the sale order that it had considered "oral argument of the parties,"CT 851) it is undisputed that the court did not conduct such a hearing.

hearing." ' " (*Severson, supra*, 37 Cal.App.5th at p. 951; *TriCoast, supra*, 15 Cal.5th at p. 787.)

Lisa and Kathy contend they were denied due process by the trial court's failure to conduct a hearing on the referee's untimely noticed ex parte application prior to confirming the sale of the property and that such defects were structural. However, they cite no authority for the proposition that failure to either timely notice a motion to confirm a sale under section 873.720, subdivision (b) or hold a hearing under section 873.610, subdivision (b) is structural error.[13] (See *F.P., supra*, 3 Cal.5th at p. 1108.)

Nor do Lisa and Kathy engage in any cogent argument as to how the sale order deprived them of their property rights without due process when (1) the trial court considered Lisa's written objections to the sale and (2) under the court's order Lisa will be financially compensated for her ownership interest in the property through the partition sale. We decide Lisa and Kathy have not met their burden of demonstrating that the trial court's failure to conduct a hearing constituted structural error.

Alternatively, Lisa and Kathy request this court reverse the sale order because the trial court's error was prejudicial. The general rule " ' "prohibits a reviewing court from setting aside a judgment due to trial court error unless it finds the error prejudicial," ' " or, in other words, that it resulted in a miscarriage of justice. (*TriCoast, supra*, 15 Cal.5th at p. 786, quoting *F.P., supra*, 3 Cal.5th at p. 1108.) A reviewing court decides error is prejudicial only if "it is reasonably probable that a result more favorable to the appealing

---

[13] One of the cases Lisa and Kathy cite, *Farmers & Merchants Nat. Bank of Los Angeles County v. Superior Court* (1944) 148 P.2d 445, was vacated and is therefore not binding. The other, *Judith P. v. Superior Court* (2002) 102 Cal.App.4th 535, considers protections in dependency proceedings.

party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

Lisa and Kathy contend that, had the referee provided timely notice as required by section 873.720, subdivision (b) and had the trial court conducted a hearing as required by section 873.610, subdivision (b), they would have been able to provide a more complete opposition to the referee's ex parte application and "submit an overbid" in accordance with sections 873.730 and 873.740. They assert that, because the referee was " 'not able to act upon [Lisa's] offer without breaching the agreement with the [b]uyer,' " the hearing was the only opportunity for the trial court and the referee to consider an overbid offer.

At oral argument, Lisa and Kathy asserted that at the hearing they could have called witnesses who could testify about Lisa's ability to pay for the property and compare her offer with that of the buyers. They further asserted that the court at the hearing would have been required to accept Lisa's "statutory overbid."

Louis contends that Lisa's opposition had already "[f]ully [p]resented" (boldface omitted) her points challenging the referee's application and "a complete offer" for the property. (Italics omitted.) He asserts that she fails to meet her burden on appeal because, until oral argument, she did not state that additional witnesses, appraisals, documents, or financial confirmations would be introduced at a live hearing, did not request the right to cross-examine the referee, submit evidence rebutting his statements, or claim bias or misconduct.

In addition, Louis asserts that the trial court had already found Lisa unreliable as a buyer in its order granting summary judgment. He contends that, under the doctrine of implied findings, deficiencies in Lisa's loan

preapproval letter and the court's alleged finding of Lisa's unreliability during the summary judgment phase of the proceedings provide substantial evidence to support the court's issuance of the sale order.

We disagree. The trial court made no express or implied finding in its order granting summary judgment that Lisa was unreliable as a buyer. The court recounted only Lisa's efforts at obtaining a loan over the course of a five-month period, which included obtaining approval for a loan at the end of that period, albeit after the deadline in the agreement had passed. Even if we could infer that the court made such an implied finding in its sale order, the doctrine of implied findings is not applicable here. (See *McMillin Companies, LLC v. American Safety Indemnity Co.* (2015) 233 Cal.App.4th 518, 532, fn. 21.)

Nevertheless, we decide Lisa and Kathy have failed to meet their burden of demonstrating prejudicial error. They did not identify in their appellate briefing any specific information or witness testimony that they could have presented at the hearing that Lisa had not already conveyed to the court in her opposition to the ex parte application. At oral argument, Lisa and Kathy alluded only generally to being able to offer testimony that Lisa would have been financially able to purchase the property, and an expert that would discuss the respective offers. Lisa and Kathy failed to identify what her "statutory overbid" would have contained that the offer she submitted to the referee did not. With respect to the lost opportunity to present a "statutory overbid," Lisa and Kathy stated only that the two types of offers are distinguishable and that the trial court would have been required to accept Lisa's statutory overbid.

Lisa's and Kathy's assertions of prejudice are conclusory. They present no specifics about the content of the evidence they were precluded from

presenting due to the trial court's failure to conduct a hearing on the referee's report that would have rendered it reasonably probable that the trial court would have issued an order more favorable to them. Instead, they rely on and reiterate bare recitations of their contentions that Lisa could have "more fully oppose[d]" the ex parte application, submitted an overbid, and proffered unspecified witness testimony. Such unsupported contentions are insufficient. (See *In re S.C.* (2006) 138 Cal.App.4th 396, 408; *Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862.)

Furthermore, Lisa and Kathy misconstrue the statutory language, which grants the trial court discretionary authority over whether to confirm or vacate the sale recommended by the referee if "a responsible bidder makes a written increased offer" during the hearing. (§ 873.740, subd. (a) [stating that "the court in its discretion may" vacate the sale and either direct that a new sale be made or accept and confirm the increased offer]; see also § 873.730, subd. (c) ["The court may vacate the sale and direct that a new sale be made if it determines" that a new sale would yield a higher amount.].) While we are sympathetic to Lisa's desire to retain the family home, and agree that the trial court erred in finding proper notice of the ex parte application and in failing to conduct the required hearing, we decide Lisa and Kathy have not met their burden of demonstrating that these errors were prejudicial. We affirm the court's order confirming the referee's ex parte application for final sale approval.

### III. DISPOSITION

The May 6, 2024 attorney fee order is reversed. On remand, the trial court is directed to vacate its award of attorney fees incurred for the common benefit and, upon further consideration on remand, determine the amount of

33

attorney fees to be awarded to Louis Tran under Civil Code section 1717 on the third, fourth, and fifth causes of action of the cross-complaint.

The May 24, 2024 order confirming the referee's ex parte application for final sale approval is affirmed.

In the interests of justice, the parties shall bear their own costs in these appeals.  (Cal. Rules of Court, rule 8.278(a)(3).)

_____
Danner, J.

WE CONCUR:


_____
Greenwood, P. J.



_____
Lie, J.




**H052186, H052300**
***Tran v. Tran et al.***